## Samuel S. Hartranft *v.* Morris Fussell, Appellant.

*Deceit—Fraud—False representations—Vendor and vendee.*

In an action of trespass in the nature of deceit to recover damages for false representations in reference to a marble mill which had been sold by the defendant to the plaintiff, the evidence for the plaintiff tended to show that the defendant had represented (1) that the mill would grind from five to six tons of marble per day, when in fact it would grind only from one and one half to two tons in that length of time, and (2) that he had also represented that he and his associate owned all the machinery in the mill, when in fact they owned none of it, except a pulverizer. Defendant's evidence tended to show that no such representations were made. *Held*, that the case was for the jury, and that a verdict and judgment for the plaintiff should be sustained.

Argued Feb. 8, 1897. Appeal, No. 418, Jan. T., 1896, by defendant, from judgment of C. P. Chester Co., Oct. T., 1893, No. 43, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Trepass in the nature of deceit to recover damages for loss occasioned by the alleged false representations of the defendant as to a marble mill which he had sold to the plaintiff. Before HEMPHILL, J.

The facts appear in the charge of the court below which was in part as follows:

Misrepresentations that are material and induce a man to enter into a contract, entitle him to recover damages for any injuries he may have sustained thereby, because, in law it is a fraud; he has been induced by means of a fraud to enter into a contract which he otherwise would not have entered into.

To establish that these misrepresentations were made, is upon the·plaintiff, Mr. Hartranft; the burden is on him. Now what are the misrepresentations that are alleged to have been made? They are two-fold. First, the misrepresentation that he has alleged was made was that the mill would grind from five to six tons of marble or material a day, whatever it might be. Now, it is not questioned that that was true. It seems to be unquestioned in the case. In fact, all the truth is to the contrary, that it would grind but from one ton and a half to two tons per day. So, if that statement was made that it would grind from five to six tons a day, it was not true, it was a misrepresentation. The other alleged misrepresentation was that Patterson and Fussell owned the machinery in the mill. That is admittedly untrue. They owned of all the machinery in the mill, as I recall it, nothing but what is known as the pulverizer and perhaps the attachments to it. So, if that statement was made by Dr. Fussell as an inducement for Mr. Hartranft to purchase, it was a misrepresentation, because it was untrue. [So that material question, as far as these misrepresentations are concerned, is, were they made in the presence and hearing of Dr. Fussell without his remonstrance or without his declaring them to be untrue? Because, if they were, he is as much responsible as though he had made them himself.] [1 a] Now, what is the testimony? It is first for the plaintiff to satisfy you that his version is a true one. If he has failed in that, then he has failed in establishing that portion of his case, and so far, your verdict would be for the defendant. The sole witness on the part of the plaintiff as to where this occurred and when these representations were made is Mr. Hartranft himself. The only others present at that time were Mr. Patterson, who is absent, Dr. Fussell, the defendant, and a portion of the time, Dr. Fussell's daughter. Mr. Hartranft tells you that upon this occasion, which was the second visit to Dr. Fussell—upon the first nothing was said in relation to the purchase of his interest; they merely walked over the ground, as I recall it and looked at his ochre beds,—he went

there for the purpose of purchasing the doctor's interest, for he stated he had arranged with Mr. Patterson before going there, to 'enter into partnership with him in these works provided he purchased the doctor's interest. When they reached the doctor's and entered into the negotiation which took place in the doctor's interest, Mr. Hartranft says,—and this was within a week, he says, after his first visit,—Mr. Patterson opened the conversation and said that Hartranft wished to purchase the doctor's interest. The doctor inquired what price Patterson had named, and Patterson said $1,500. The doctor thought that this was not enough, but finally agreed to take it. Mr. Hartranft states he then said, " I said if the mill will grind five or six tons a day, and you own the machinery as Mr. Patterson has represented, I will buy." " Patterson spoke up and said that that was true." Now, that is the testimony of the plaintiff as to what occurred, as to what the representations were which induced him to purchase, and they occurred in the library of the doctor. Upon cross-examination he says " Patterson said that I wanted to purchase, and the doctor asked what price Patterson named, and Patterson said $1,500. The doctor said that was not enough. I said, if the mill would grind five or six tons a day, as Patterson said, and that they owned the machinery, I would take the risk of the manufacture of the ochre." It is substantially the same on cross-examination. And it is upon that statement he asks you to believe he was induced to make the purchase, and on the representations made in the presence and hearing of Dr. Fussell, and he asks you to award him damages for the loss sustained by reason of his entering into the contract under these circumstances.

Now what is the testimony upon the part of the defendant? It is all within a very narrow compass, and there are but few witnesses regarding these representations being made to the plaintiff. One of the other persons present besides the plaintiff was Dr. Fussell himself, and Dr. Fussell's detail of what then took place was as follows : " Nothing whatever was said in my presence as to the capacity of the mill. Mr. Patterson said Mr. Hartranft proposed to buy my interest, and that $1,500 was what he was prepared to pay, and that they would lease my ochre deposits and manufacture it into paint." After they had explained the contents of the lease he asked his daughter to

get it.  He says : " I do not think there was much said about
the machinery, if anything, at that time."  So that you see the
testimony here is conflicting, and it is for you to determine
where lies the truth, because, the credibility of the witnesses is
for you to pass upon ; they are brought before you for that pur-
pose in order that you may be the better able to judge not
merely from statements they make, not merely from the facts
they testify to, but from their appearance and manner on the
stand, and their manner of giving their testimony upon the
stand.  In addition to the testimony of the parties here—the
plaintiff and the defendant—is the testimony of Mrs. Bower,
the daughter of Dr. Fussell.  Mrs. Bower, you will recollect,
was not in the room all the time, she was attending to other
duties, and was out upon one occasion in search of a copy of the
lease.  But the testimony here as I recall it—and if I am incor-
rect you will correct me, because it is your duty not to rely
upon either the statements of counsel or the court, but upon
your own recollection—the testimony as far as the representa-
tions are concerned depends upon Dr. Fussell and Mr. Hart-
ranft, the burden being upon Mr. Hartranft to show they were
made before he is entitled to recover.

In addition to what occurred upon the 15th day of May in
his library, the defendant asks you to give credit to his state-
ment of what then occurred by reason of that which he produces
as corroborating evidence of his version, and first is testimony
of his own as to what occurred at the mill previous to this inter-
view in the library.  He tells you that he and Mr. Hartranft
were at the mill together, and that while there the engine was not
working properly, and he remarked to Mr. Hartranft that the
engine was too light ; that the engine and boiler, perhaps—was
too light for the work they had to do, that it ought to be
heavier ; Mr. Hartranft thought the trouble was not the light-
ness of the engine, but suggested it was occasioned by sand that
had got into some part of the machinery.  Dr. Fussell states it
was this conversation that led up to the remark by him, " Well,
you know that we do not own the engine and boiler ; it belongs
to the mill," or words to that effect.  Now that, I say, is offered
as corroborating evidence that nothing was said about the
machinery, according to Dr. Fussell's statement, at the inter-
view in the library, for the reason Mr. Hartranft must have

known at that time that the machinery and boiler did not belong to Dr. Fussell.

In addition to that the other corroborating piece of evidence is that testified to by his daughter, who tells you that that evening after supper, on the porch—for Mr. Hartranft tells you that he missed the train and had to remain over night—that in a conversation with the daughter, on the porch, about these works and about this business, she said, " Mr. Hartranft and I were talking about the mill and I said that papa had said if he owned the mill he would have got a stronger engine, that it was not as strong as it should be." Now these, I say, gentlemen, are the two pieces of corroborating evidence [and you will say from all this testimony whether or not the plaintiff has satisfied you that these misrepresentations—because they were unquestionably misrepresensations, if made—were made as he stated, in the presence and in the hearing of Dr. Fussell. If they were so made, then the plaintiff would be entitled to a verdict for whatever damages he has sustained.] [1 b]

Another claim in this case is that Dr. Fussell sold to the plaintiff his interest in the lease of the property from Towers & Gotwals and that he failed to make to him a conveyance of that interest. On that point there seems to be no question; it seems to be admitted on both sides that part of the consideration for the $1,500 paid by Mr. Hartranft was Dr. Fussell's interest in this lease. [And it was therefore his duty to see that that interest was transferred or conveyed to Mr. Hartranft; it was his place to look after that, unless Mr. Hartranft relieved him from so doing or waived the right which he had to compel him or require him to see to the transfer.] [2 a]  Dr. Fussell says in the conversation which took place upon the 15th day of May that the lease was discussed and says, "After we had explained the contents of the lease, I asked my daughter to get it. She left the room and attempted to find it and could not. She returned," and so on. "Then I told Mr. Hartranft that I thought I had a copy, but that he could see one at Mr. Towers'; that it was necessary to have their consent to the transfer." Mr. Hartranft, he says, replied that he would call on Towers, and that this all took place before the execution of the papers. Now that, in substance, is Dr. Fussell's testimony; that he explained or attempted to explain to Mr. Hartranft the contents

of this lease, and that in order to make it more clear and explicit he sent for the copy which he thought he had in his possession, sent his daughter to look for it, but when she returned and said she could not find it, then he told him he could see the lease at Mr. Towers' in Phœnixville, and that it was necessary to have their assent to the transfer. And he tells you that Mr. Hartranft did agree to go to Towers' and see the lease and look after the transfer himself. Now in addition to this statement of the defendant—for the burden is on him to satisfy you that Mr. Hartranft agreed to look after this matter himself and relieve him from a duty which was imposed upon him otherwise— Mrs. Bower, his daughter, tells you that she was present. Whether it was before or after she was sent for the lease I do not know that she stated, but she says: "I heard papa say about the amount of the rent and that it was a purchase money lease. He told Mr. Hartranft that he would have to go and see Towers & Gotwalls and see the lease and get them to transfer it. Mr. Hartranft said he would, said he was satisfied with the whole negotiations, all that took place." Now that is the testimony on the part of the defendant here in attempting to satisfy you that he was relieved from the duty which the law imposes upon him, in seeing to the transfer of his interest in the lease which he had sold to Mr. Hartranft, by reason of Mr. Hartranft's own action; by reason of his own agreement to go and see the lease in the possession of Towers & Gotwalls and attend to having a transfer made to himself. Now Mr. Hartranft, as I recollect, says about this portion of the conversation on the 15th day of May: "I was told that I could see the lease at Towers & Gotwalls', and I was requested to go there and see it. Patterson said we could see it over at Phœnixville." Now that is his testimony touching that point. He has no recollection, or at least does not testify to having agreed to attend to the transfer himself. Now, gentlemen of the jury, has the defendant in this instance satisfied you, that he was relieved from the duty of looking after this transfer of his interest in the lease himself? If he has so satisfied you, then the plaintiff has no claim on that behalf. If the defendant has failed to satisfy you that he was relieved, then it was his duty to have attended to the transfer or otherwise answer for the damages Mr. Hartranft has sustained by reason of his nonfulfilment of his duty in this respect.

Now, I do not know that I need dwell further on the case or comment on the testimony which has been commented upon by counsel on the one side or the other. [It would strike me the material questions of the case are, first, were the misrepresentations made in the presence of Dr. Fussell which the plaintiff testifies were so made? Has he satisfied you that they were so made and that Dr. Fussell heard them and remained silent? If he has, then he is entitled to recover such damages as he has sustained by reason of entering into that contract through those fraudulent representations.] [1c] If the plaintiff has failed to satisfy you, or if you think credit should be given to the defendant, that his testimony satisfies you that they were not made, then the defendant would be entitled to your verdict. [On the other hand, as I have said to you, it was the duty of the defendant here when he sold his half interest in the lease of Towers & Gotwalls to see to the transfer to Mr. Hartranft unless Mr. Hartranft relieved him from that duty. The defendant has attempted to satisfy you that he did, the burden there being upon him as the burden in the other instance was upon Mr. Hartranft.] [2 b] If he has satisfied you that Mr. Hartranft relieved him of that duty, then the plaintiff has not been injured by any neglect of his so far as the lease is concerned, because he waived his right to insist upon the performance of the duty which the law imposed upon Dr. Fussell.

[Now, gentlemen of the jury, if you find that these misrepresentations were made in the presence of Dr. Fussell and that he heard them—because, of course, he could not be required to contradict that which he did not hear—that would be an absurdity which the law does not contemplate,—but if the plaintiff has satisfied you that these misrepresentations were made in the presence and hearing of Dr. Fussell, and he has failed to controvert them, to deny them or to contradict them, then he is just as responsible as though he made them himself, and the plaintiff would be entitled to damages for injuries he has sustained by reason of entering into the contract under these fraudulent misrepresentations.] [1 d]

Verdict and judgment for plaintiff for $1,221.20. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*H. H. Gilkyson,* for appellant.—The law raises no presumption of a knowledge of fraud from the mere fact that the representations were false: 5 Am. & Eng. Ency. of Law, 320; McDonald v. Trafton, 15 Me. 225; Barnett v. Stanton, 2 Ala. 181; Edick v. Crim, 10 Barb. 445; Collins v. Evans, 5 Q. B. 820; King v. Eagle Mills, 10 Allen, 548; Bigelow on Fraud (1877), 57. In every case of deceit the scienter must be averred and proved: Dilworth v. Bradner, 85 Pa. 238; Duff v. Williams, 85 Pa. 490; McCandless v. Young, 96 Pa. 289; Hexter v. Bast, 125 Pa. 52; Freyer v. McCord, 165 Pa. 539; 5 Am. & Eng. Ency. of Law, 318.

If the complaining party was deceived by false representations he must show that he used ordinary diligence, that his means of knowledge was not equal to those of the defrauding party in order to have any redress: Tyre v. Causey, 4 Harring. 425; Hazard v. Irwin, 18 Pick. 95; Henshaw v. Robins, 9 Met. 83; Fisher v. Mellen, 103 Mass. 503; McFarland v. Newman, 9 Watts, 55; Fisher v. Worrall, 5 W. & S. 478; Bitting's App., 17 Pa. 211; Phipps v. Buckman, 30 Pa. 401; Clapp v. Hoffman, 159 Pa. 531; Mahaffey v. Ferguson, 156 Pa. 156; Slaughter v. Gerson, 13 Wall. 379; Rockafellow v. Baker, 41 Pa. 319; Hobbs v. Parker, 31 Me. 143.

*Alfred P. Reid,* for appellee.—When a man accepts the benefits of a bargain induced and based upon misrepresentations made with his knowledge and apparent consent, he accepts the conditions on which it has been obtained as though made by himself: Story on Sales (4th ed.), sec. 165; Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 424; Spath's Est., 144 Pa. 391.

The representations must be false to the knowledge of the defendant; they must be made by him recklessly, that is to say, without reasonable ground for believing them to be true, or under circumstances which show that he was careless as to whether they were in fact true or false: 1 Smith's Leading Cases, Part 1, p. 320; Bennett v. Judson, 21 N. Y. 238; Krumm v. Beach, 96 N. Y. 398; Litchfield v. Hutchinson, 117 Mass. 197; Addison on Torts, Wood's ed. sec. 1184; Lobdell v. Baker, 1 Metcalf, 201.

To assert for a truth what the party does not know to be so,

is equivalent to the assertion of a known falsehood: Fisher v. Worrall, 5 W. & S. 485; Erie City Iron Works v. Barber, 106 Pa. 125; Croyle v. Moses, 90 Pa. 250; Bower v. Fenn, 90 Pa. 359; Watts v. Cummins, 59 Pa. 85; Lamberton v. Dunham, 165 Pa. 132; Griswold v. Gebbie, 126 Pa. 353; Freyer v. McCord, 165 Pa. 539; People's Bank v. Kurtz, 99 Pa. 344; Charnley v. Dulles, 8 W. & S. 361; Watts v. Cummins, 59 Pa. 84.

PER CURIAM, April 12, 1897:

This suit is in the nature of an action for deceit. It is grounded on alleged false representations in regard to the property known as the "Globe Paint Works," the undivided half interest in which was sold by the defendant to the plaintiff, whereby the latter was deceived and fraudulently induced to purchase and pay for the same. The alleged misrepresentations are two-fold: (1) That the mill would grind from five to six tons of marble or material per day, when in fact it would grind only from one and a half to two tons in that time.

(2) That the defendant and his associate, Patterson, owned all the machinery in the mill, when in fact they owned none of said machinery except the pulverizer and its attachments.

The burden of proof was on the plaintiff. His right to recover depended on questions of fact which it was the special province of the jury to determine. Those questions were fairly submitted with instructions which, considered as a whole, appear to be adequate and free from substantial error. No question is raised either as to the introduction of incompetent or irrelevant testimony or the exclusion of evidence that should have been received; nor is there any doubt that the testimony properly before the jury was quite sufficient, under the charge of the court, to justify them in finding as they did. The verdict necessarily implies a finding of the facts substantially as claimed by the plaintiff.

There is nothing in either of the five specifications of error that requires discussion.

Judgment affirmed.